UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLOVIS JOHNSON : | |
|     Plaintiff, : | |
| : | CIVIL ACTION NO. |
| v. : | 07-cv-0106 (JCH) |
| : | |
| U.K. GOVERNMENT, ET AL. : | MARCH 26, 2009 |
|     Defendant. : | |

**ORDER RE: 28 U.S.C. § 1915**

**I.  INTRODUCTION**

Plaintiff, Clovis Johnson, initiated the present case on January 23, 2007, against defendants, the Government of the United Kingdom of Great Britain and Northern Ireland (the "U.K. Government") and British Consul-General in New York Julie D. Morl (together "defendants").[1]  Johnson claims that defendants violated section 1983 of title 42 of the United States Code when they denied his application for political asylum.[2]  See Complaint (Doc. No. 1) at 3.  Johnson proceeds pro se and in forma pauperis.

Because Johnson proceeds in forma pauperis, the court conducts an initial screening of his complaint to ensure that the case advances only if it meets certain requirements.  Specifically, "[t]he court shall dismiss [a] case at any time if the court

---

[1] Johnson has referred to defendant Morl alternatively as the "British Pro Consul," "British Consulate General," and "British Consul."  It is unclear what position Morl now holds, or once held, in the U.K. Government.  It appears that Johnson believes Morl was, at one time, the principal officer of the British Consulate General in New York, and therefore the court will refer to defendant Morl as Consul-General.

[2] Johnson claims that he is a citizen of Jamaica and a "commonwealth citizen" of the United Kingdom.  See Complaint (Doc. No. 1) at 3.  It appears that, because he is not a citizen of the United States, Johnson faces deportation from this country upon his release from custody.  This suit stems from Johnson's wish to be deported to the United Kingdom rather than Jamaica, where he fears for his safety due to his past political affiliations.  See Letter attached to Complaint (Doc. No. 1).

determines that . . . the action . . . is frivolous or malicious; . . . fails to state a claim on which relief may be granted; or . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). After reviewing Johnson's complaint, the court finds that the case cannot be allowed to proceed. Consequently, the complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for the reasons stated herein.

## II.   STANDARD OF REVIEW

Johnson has met the requirements of 28 U.S.C. § 1915(a) and has been granted leave to proceed in forma pauperis in this action. Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), "the court shall dismiss [an in forma pauperis] case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." See Cruz v. Gomez, 202 F.3d 593, 596 (2d Cir. 2000) (under the Prison Litigation Reform Act, "dismissal for failure to state a claim is mandatory"). In reviewing the complaint, the court "accept[s] as true all factual allegations in the complaint" and draws inferences from these allegations in the light most favorable to the plaintiff. Cruz, 202 F.3d at 596 (citing King v. Simpson, 189 F.3d 284, 287 (2d Cir. 1999)). Dismissal of the complaint under 28 U.S.C. § 1915(e)(2)(B)(ii), is only appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 597. In addition, "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim," the court should permit a pro se plaintiff who is proceeding in forma pauperis to file an amended complaint that states a claim upon which relief may be granted. Gomez v. USAA Federal Savings Bank, 171 F.3d 794, 796 (2d Cir. 1999).

## III. BACKGROUND

On December 18, 2007, this court dismissed Johnson's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) for frivolity and failure to state a claim upon which relief may be granted. See Order (Doc. No. 10) at 1-2. Specifically, the court held that Johnson's Complaint warranted dismissal because it alleged the violation of rights secured by the laws of the United Kingdom, while section 1983 only applies to the deprivation of rights guaranteed by the Constitution or laws of the United States. As a result, the court dismissed the case and entered judgment for the defendants. Id. Johnson timely appealed on January 10, 2008. See Notice of Appeal (Doc. No. 12).

On December 9, 2008, the Second Circuit vacated the judgment and remanded the case for further proceedings. See Mandate (Doc. No. 14). The Second Circuit held that Johnson "alleged facts sufficient for a showing of jurisdiction under 28 U.S.C. § 1351 (providing the district courts with jurisdiction over actions against consuls of foreign states, and, thus, sua sponte dismissal, without a grant of leave to amend . . . was inappropriate." Id.

Following the Second Circuit's Mandate, on January 12, 2009, this court ordered Johnson to clarify (1) "whom, exactly, he intended to bring a claim against when he filed this lawsuit;" and (2) the "cause of action he is asserting against each of the defendant(s) he has sued." Order (Doc. No. 15) at 2-3. In a response dated January 20, 2009, Johnson confirmed that he intended to sue two defendants (the U.K. Government and Consul-General Morl) and that the basis for his claims is Consul-

General Morl's denial of his application for political asylum.[3]  Subsequently, in an Order dated March 2, 2009, the court ordered Johnson to show cause why this suit should not be dismissed for lack of subject-matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 et seq.  In a response dated March 11, 2009, Johnson briefly addressed the FSIA, noting that, under 28 U.S.C. § 1330(a), which refers to the provisions of the FSIA, district courts have "original jurisdiction . . . over civil actions against foreign states as to any claim with respect to which the foreign state is not entitled to immunity . . . ," and that, as "an organ of a foreign state," Consul-General Morl falls within the FSIA.  Response (Doc. No. 19) at 3-4.

## IV.  DISCUSSION

### A.  Claims Against the U.K. Government

Johnson brings suit against the government of the United Kingdom of Great Britain and Northern Ireland, a foreign state.  The Foreign Sovereign Immunities Act of 1976 ("FSIA" or "the Act"), 28 U.S.C. § 1602 et seq., establishes a comprehensive framework for determining whether a court in this country, state or federal, may exercise jurisdiction over a foreign state.  See Republic of Arg. v. Weltover, Inc., 504 U.S. 607, 610-611 (1992).  "Under the Act, a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."

---

[3] As for a specific cause of action, Johnson cites the Code of Federal Regulations (providing detained aliens the privilege of communication with the relevant consular authorities), 28 U.S.C. § 1343(a)(3) (providing district courts with jurisdiction over civil actions "to redress the deprivation, under color of any State law . . . of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States"), and the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993). The FSIA thus provides the "sole basis" for obtaining jurisdiction over a foreign sovereign in the United States. See Republic of Arg. v. Weltover, Inc., 504 U.S. 607, 610-611 (1992). As a result, the U.K. Government is presumptively immune from suit in the courts of the United States. See 28 U.S.C. § 1602 et seq.

Johnson does nothing to rebut this presumption. He does not allege that any of the statutory exceptions to the FSIA apply to his claims against the U.K. Government, nor does the record contain facts that would support such a finding.[4] Because no FSIA exception applies, the claims against the U.K. Government must be dismissed for lack of subject-matter jurisdiction. See Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993).

B.  Claims Against Consul-General Morl

In addition to his claims against the U.K. Government, Johnson brings suit against Consul-General Morl, "an officer under the supervision, direction, and control" of the U.K. government. Response (Doc. No. 17) at 1. Johnson sues Morl in her "official capacit[y]" for actions taken in her "official capacities." Id. at 3.

Section 1351 of title 28 of the United States Code provides: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of all civil actions and proceedings against (1) consuls or vice consuls of foreign states . . . ." Thus, this court may exercise jurisdiction over the claims against Consul-General Morl.

---

[4] In response to the court's Order to Show Cause why his suit is not barred by the FISA, Johnson relies primarily on the fact that he is alleging "class-based invidious discrimination," from which the "Vienna Convention on Consular Relations does not grant immunity." Response (Doc. No. 19) at 1. However, the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77, T.I.A.S. No. 6820, 596 U.N.T.S. 261 (the "Vienna Convention") does not govern the immunity of a foreign government itself, but rather the immunity of the consular officials and staff representing that government. See section IV, B, infra at 5-8.

Jurisdiction under section 1351, however, may be limited by statute or treaty, such as the FSIA or the Vienna Convention.  See Whitney v. Robertson, 124 U.S. 190 (1888) ("By the constitution, a treaty is placed on the same footing, and made of like obligation, with an act of legislation").  Thus, in an Order dated March 2, 2009, the court ordered Johnson to show cause why Morl was not immune from this suit.  In his Response, Johnson argued that neither the FSIA nor the Vienna Convention grant Morl immunity from his claims.  The court disagrees.

        1.   The Foreign Sovereign Immunities Act

While the Circuits are split with respect to whether the FSIA shields individual officials of foreign governments from suit in the United States, the Second Circuit recently held that, "an individual official of a foreign state acting in his official capacity is the 'agency or instrumentality' of the state, and is thereby protected by the FSIA." In re Terrorist Attacks on September 11, 2001, 538 F.3d 71, 81 (2d Cir. 2008) (quoting 28 U.S.C. § 1603(a), (b)).

Despite this holding, however, it is not clear whether Morl, as a consular official, is immune from suit under the FSIA.  The lack of clarity stems from the fact that, while a Consul-General acting in her official capacity appears to be "an individual official of a foreign state" and thus protected by the FSIA under In re Terrorist Attacks on September 11, 2001, 538 F.3d at 71, immunity of consular officials has long been analyzed according to the Vienna Convention rather than the FSIA.[5]  In fact, prior to the

---

[5] As numerous courts have noted, the Vienna Convention – a multi-lateral contract between many sovereign states – was written well before the FSIA, and in enacting the FSIA, Congress did not intend the legislation to affect existing immunities already governed by international agreements.  See, e.g., Tachiona v. United States, 386 F.3d 205, 221 (2d Cir. 2004) (concluding that, "the legislative history indicates that Congress intended to devise rules to resolve claims of sovereign immunity of foreign states

Second Circuit's ruling in In re Terrorist Attacks on September 11, 2001, 538 F.3d at 71, at least one court in this Circuit held that, based on the legislative history of the FSIA and the fact that the Vienna Convention already provides jurisdictional immunity to consular officers, "the FSIA does not apply to diplomatic officials."[6] Mateo v. Perez, 1999 U.S. Dist. LEXIS 4871 (S.D.N.Y. Apr. 8, 1999). This court knows of no decision from the Second Circuit following its opinion In re Terrorist Attacks on September 11, 2001, 538 F.3d at 71, that directly addresses whether the FSIA applies to consular officials.[7] The court need not answer that question here, however, because regardless of whether Morl is entitled to immunity under the FSIA, she is entitled to immunity under the Vienna Convention.

### 2. Article 43 of the Vienna Convention

Article 43 of the Vienna Convention provides that, "[c]onsular officers and consular employees shall not be amenable to the jurisdiction of the judicial or administrative authorities of the receiving State in respect of acts performed in the exercise of consular functions." Thus, jurisdiction can be gained over consular officers only with respect to acts that do not constitute "consular functions." The term "consular functions" is defined in Article 5 of the Vienna Convention, which contains thirteen

---

without in any way affecting established practice governing suits involving diplomatic or consular representatives"); see also Tabion v. Mufti, 73 F.3d 535, 539 (4th Cir. 1996); Paredes v. Vila, 479 F. Supp. 2d 187, 193 (D.D.C. 2007).

[6] While the Mateo court used the term "diplomatic officials" rather than "consular officials," context makes clear that the court was referring to consular officials as well. See Mateo v. Perez, 1999 U.S. Dist. LEXIS 4871 (S.D.N.Y. Apr. 8, 1999)

[7] At least one other Court of Appeals has recognized that the application of the FSIA to consular officials is an open question. See Park v. Shin, 313 F.3d 1138, 1143 (9th Cir. 2002) (noting that Ninth Circuit precedent did not "conclusively answer" the question of whether the FSIA applies to consular officials).

sections. Three sections of Article 5 are relevant to the present case. Specifically, consular functions consist in:

> (a) protecting in the receiving State the interests of the sending State and of its nationals, both individuals and bodies corporate, within the limits permitted by international law; . . . (d) issuing passports and travel documents to nationals of the sending State, and visas or appropriate documents to persons wishing to travel to the sending State; . . . [and] (m) performing any other functions entrusted to a consular post by the sending State which are not prohibited by the laws and regulations of the receiving State or to which no objection is taken by the receiving State or which are referred to in the international agreements in force between the sending State and the receiving State.

Article 5, Vienna Convention. Adjudicating applications for political asylum is a consular function under sections (a), (d), or (m) of Article 5. That is, in determining whether Johnson should be granted asylum and allowed reside in the United Kingdom, Morl was: "(a) protecting in the [United States] the interests of the [United Kingdom] and of its nationals;" "(d) issuing [or in this case, refusing to issue]. . . visas or appropriate documents to persons wishing to travel to the [United Kingdom];" and (m) performing "functions entrusted to a consular post by the [United Kingdom] which are not prohibited by the laws and regulations of the [United States]." Id.

Because the acts alleged in Johnson's Complaint are consular functions under Article 5 of the Vienna Convention, these acts are protected by consular immunity. Thus, the Vienna Convention precludes the exercise of jurisdiction under 28 U.S.C. § 1351 over Consul-General Morl. As a result, the claims against Morl must be dismissed for lack of subject-matter jurisdiction.

### C. Right to Replead

As noted earlier, "unless the court can rule out any possibility, however unlikely it

might be, that an amended complaint would succeed in stating a claim," the court should permit a pro se plaintiff who is proceeding in forma pauperis to file an amended complaint that states a claim upon which relief may be granted. Gomez v. USAA Federal Savings Bank, 171 F.3d 794, 796 (2d Cir. 1999). In this case, Johnson has been provided ample opportunity to state a claim upon which relief may be granted. He has filed a Complaint (Doc. No. 1), an Amended Complaint (Doc. No. 16), and two responses to the court's Orders to Show Cause why the case should not be dismissed (Doc. Nos. 17 and 19), none of which state a claim upon which this court can grant relief.

Further, because Johnson seeks money damages and equitable relief (i.e., deportation to the United Kingdom) based on a discretionary act taken by an agent of a foreign state concerning which individuals will be allowed to enter that state, the court finds that there is no possibility a further amended complaint would succeed in stating a claim. Consequently, Johnson's Complaint is dismissed without leave to replead.

### III.     CONCLUSION

Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), this case is dismissed, with prejudice, for failure to state a claim upon which relief may be granted. The Clerk is directed to enter judgment for the defendants and close this case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 26th day of March, 2009.

                                  /s/ Janet C. Hall
                                  Janet C. Hall
                                  United States District Judge